## Case No. 13,843.

### TESCHEMACHER et al. v. UNITED STATES.

[Hoff. Land Cas. 28.] [1]

District Court, N. D. California. June Term, 1855. [2]

MEXICAN LAND GRANTS—PRINCIPLES GOVERNING—GRANT FOR MERITORIOUS SERVICE.

Ordinary grants and those for meritorious services are governed by the same principles and regulations.

Appellants [H. F. Teschemacher and others] claim the tract of land known as Lup Yomi, in Napa county, alleged to contain fourteen leagues, granted by Governor Manuel Micheltorena, on the fifth of September, 1844, to Salvador Vallejo and Juan A. Vallejo. The claim was rejected by the board of land commissioners.

Thornton & Williams, for appellants.

S. W. Inge, U. S. Dist. Atty., and A. Glassell, for appellees.

HOFFMAN, District Judge. At the commencement of the session of this court for the hearing of appeals from the board of land commissioners, it was stated by the district attorney that a question of great importance would arise, the determination of which would materially affect, if not control, the decision of a large majority of the land cases now pending in this court. The district attorney having stated his point, the court intimated its willingness to hear

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

[2] [Reversed in 22 How. (63 U. S.) 392.]

the subject fully discussed by any members of the bar whose cases might be affected by the determination of the question. Pursuant to this invitation, the court has been favored with elaborate and learned discussions, which have occupied its attention during several days, and in the course of which not only the points raised by the district attorney, but other questions, arising out of the system of granting land formerly prevailing in this country, have been fully examined. As to many of these, it would be inexpedient for the court now to express its opinion. Its more immediate duty is confined to the determination of the points raised by the district attorney.

When the opinion of the supreme court in the case of Fremont v. U. S. [17 How. (58 U. S.) 542] was first promulgated in this state, it was generally supposed that by it principles were determined and rules of decision established applicable to all the ordinary colonization grants in California. It is urged by the district attorney that the grant to Alvarado was not an ordinary colonization grant, or at least that his title, or that of his assignee, was upheld by the court, not on considerations applicable to colonization grants generally, but on the ground that the land was originally granted to him for meritorious services; that the principles laid down by the court must be considered as applicable to such cases alone; and that those principles are still open for discussion in all cases which in this particular can be distinguished from that of Fremont. It becomes then the duty of this court, not to seek to limit the operation of the decision of the supreme court by subtle and unsubstantial distinctions between the case decided and other cases to which the same reasoning may apply, but to inquire whether the decision in question was in any respect founded upon the distinction suggested, and whether the principles laid down are not, by the reasoning by which they are supported and the facts to which they are applied, necessarily applicable to all similar cases. But one passage in the opinion of the court in the Case of Fremont has been cited as indicating that the principles determined by the court were to be limited in their application to cases where the grantee had rendered meritorious services: "The grant was not made merely to carry out the colonization policy of the government, but in consideration of the previous public and patriotic services of the grantee. This inducement is carefully put forth in the title papers; and although this cannot be regarded as a money consideration, making the transaction a purchase from the government, yet it is the acknowledgment of a just and equitable claim; and, when the grant was made on that consideration, the title in a court of equity ought to be as firm and valid as if it had been purchased with money on the same conditions."

In determining whether the considerations suggested in the foregoing extract were the true grounds of the decision of the court, it will be necessary to consider what were the questions presented for determination in that case, and what were the facts of the case before the court. The objections to the confirmation of the claim of Fremont, which chiefly received the attention of the court, were two: 1. That there was no segregation of the granted land from the public domain, no survey having been made or juridical possession given; and that the description of the grant was so vague and uncertain that nothing passed by it. 2. That the conditions of the grant had not been complied with. With respect to the first objection, it is apparent that the motives of the grantor, or the consideration on which the grant was founded, in no respect affect it. It recognizes, or does not deny, the right of the claimant to ten leagues of land somewhere; but it is based on the ground that the courts have no power to grant land, or decree an equivalent for land, that cannot be identified, and that, until its identity is established so as to enable the court to ascertain with reasonable certainty where it lies, the land remains unsevered from the public domain, and the grant cannot be confirmed. It is evident that this objection would apply with equal force to all grants with similar descriptions, and would be equally tenable, whatever the authority by which the grant was executed, or the considerations on which it was founded. The circumstance, then, that Alvarado was deemed worthy to be preferred for his patriotic services, cannot be deemed to have influenced the court in determining the question whether anything passed by the grant; and the decision of the supreme court must be received as settling the law, not only in the case of Fremont v. U. S. [supra], but in all cases of grants in California with similar descriptions. With regard to the second objection, viz. that the conditions of the grant had not been complied with, the distinction taken by the district attorney possesses greater plausibility. For if the inquiry be, what excuses for the nonperformance of the conditions shall be received, it might be contended that, in case of a grant founded in part on the consideration of previous services, the court would be less rigorous in exacting a full performance than in cases where the performance of the conditions formed the sole consideration of the grant, and that the rules laid down in one class of cases could not be applied to the other. But the reasoning of the court in the Case of Fremont in no respect proceeds upon this distinction. The court, in the previous part of its opinion, decides that the grant to Alvarado vested in him a present and immediate interest, and that the conditions attached to it were conditions subsequent. It then proceeds to inquire "whether anything done, or omitted

to be done, by him during the existence of the Mexican government in California forfeited the interest he had acquired and revested it in the government." In determining this question, the court observes "that the omission to perform the conditions did not forfeit the grantee's right. It subjects the land to be denounced by another, but the conditions do not declare the land to be forfeited to the state upon the failure of the grantee to perform them. The chief object of these grants was to colonize and settle the vacant lands. The grants were usually made for that purpose, without any claim of the grantee on the bounty or justice of the government. But the public had no interest in forfeiting them in these cases, unless some other person was ready to occupy them, and thus carry out the policy of extending its settlements. As between the grantee and the government, there is nothing in the language of the conditions, taking them altogether, which would justify the court in declaring the land forfeited to the government, where no other person sought to appropriate them, and their performance had not been unreasonably delayed; nor do we find anything in the practice or usages of the Mexican tribunals, so far as we can ascertain them, that would lead to a contrary conclusion." The court then proceeds to inquire whether there had been any such unreasonable delay, or want of effort, on the part of Alvarado, to fulfill the conditions, as would authorize the presumption that he had abandoned his claim before the Mexican power ceased, and that he was now endeavoring to resume it from its enhanced value.

It is apparent from the foregoing extracts that the learned chief justice is considering the effect of a nonfulfillment of the conditions, not merely in cases of grants made on consideration of previous services, but also in those made "without any claim of the grantee on the bounty or justice of the government." The conclusion arrived at is founded "on the language of the conditions, and their evident object and policy," and is declared to be in accordance with the practice and usages of the Mexican tribunals. That "the court is not justified in declaring the lands forfeited, where no other person has sought to appropriate them and the performance of the conditions has not been unreasonably delayed," must be deemed to be a decision applicable to all cases of grants in California, and the idea that it relates exclusively to grants founded in part on the meritorious services of the grantee must be rejected as inadmissible. But, even if the language and reasoning of the court were less clear, the facts in the Case of Fremont show that the grant to Alvarado can in no respect be distinguished from the ordinary colonization grants made in California. By reference to the petition of Alvarado to the political chief, it will be seen

that he solicits the land "according to the colonization laws." The governor, in conformity with those laws, directs the secretary to report, and all the intermediate steps are taken precisely in the manner required by the laws of 1824 and the regulations of 1828. By those laws the governor was authorized to concede lands to those who petitioned for them with the object of "cultivating them or living on them." Regulations of 1828, § 1. Nor does he seem to have been empowered to grant on any other conditions or considerations; for the regulations of 1828, under which he acted, give to the political chief no authority to make grants in reward for military services. The grant when issued is made subject to the approval of the departmental assembly, as required by the fifth section of the regulations, and it contains all the conditions, and only those, required by the policy of the colonization laws, and invariably inserted in the colonization grants. That both the governor and the grantee intended this grant to be made under the colonization law is too clear for argument; and it is abundantly evident, from the opinion of the chief justice, that the grant was considered by the supreme court as made under those laws, and by their requirements its validity was tested.

With regard to the reference made in the grant to the meritorious services of the petitioner, it is to be observed that under the colonization laws of 1824, and the regulations of 1828, they could not have formed the consideration of the grant. By the ninth section of the law of 1824, it was enacted that in the distribution of lands preference shall be given to Mexican citizens, but "between them there shall be no distinction, except that to which their particular merits or services entitle them." The meritorious services of the applicant are therefore, under the law, regarded, not as the consideration of the grant, but merely as a reason why his application should be preferred to that of others. But in his case, as in that of an ordinary colonist, the motive and consideration of the grant, as well as the object and policy of the law, were the cultivation and inhabitation of the land. In strict conformity with this provision of the law, the governor, in his grant, recites that Alvarado, "for his patriotic services, is worthy to be preferred in his pretension to the land," etc., and he then proceeds to make the grant on the usual conditions. But he does not pretend to grant the land as a recompense for meritorious services, nor from any other motive than to carry out the policy and effect the object of the colonization laws, under which he was acting; and for this purpose he adds to his grant the usual conditions, the fulfillment of which is the only consideration for the grant contemplated by the law. If any further argument were necessary to show that, in deciding the Case of Fremont, the supreme court has

laid down, and intended so to do, principles, applicable to colonization grants in California generally, and not merely to the particular case under consideration, it would be found in the first sentence of the opinion of the court. "The case," says the court, "is not only important to the claimant and the public, but it is understood that many claims in California depend upon the same principles, and will in effect be decided by the judgment of the court in this case." In the face of such a declaration, it can, we think, hardly be contended that the case was determined upon peculiar and exceptional grounds.

The case at bar remains to be more particularly considered. No oral argument upon the merits of the case was had at the hearing, but it was stated by the district attorney that the only objections to the validity of the claim on which he relied were those contained in the opinion of the board of land commissioners rejecting the claim. By reference to that opinion, it appears that the grounds upon which the board rejected the claim were two: 1. That the conditions had not been performed. 2. That the locality and boundaries are not given with sufficient definiteness to identify the premises. Without stopping to consider how far the force of the first objection is affected by the principles decided in the Case of Fremont, it is sufficient to say that it is not sustained by the proofs. Since the decision of the board was rendered, and during the pendency of the case in this court, additional testimony has been taken, which establishes beyond question the fact that the conditions of cultivating and inhabiting their rancho have been fully complied with by the grantees. The grant was issued on the fifth of September, 1844. The land had, however, previously been occupied by the grantees under a permission to occupy issued by the director general of colonization, and dated March 15, 1839. It appears that the rancho was occupied as early as 1842 or 1843 by Juan Antonio Vallejo and Salvador Vallejo, the grantees, who put upon it large numbers of horses and cattle and hogs; that they built several houses, of which the last, built either in 1844 or 1845, was an adobe consisting of two rooms, one large and the other small, and that corn, beans and watermelons were cultivated on the rancho. Had this evidence been submitted to the board, I cannot doubt but that they would have regarded the facts of cultivation and habitation as satisfactorily established.

The second objection urged by the board is, that the boundaries and locality of the granted land are not given with sufficient definiteness. The recital in the grant states that the petitioner has solicited the land known by the name of "La Laguna de Lup Yomi." The grant is made with the specification "that the land of which donation is made is sixteen leagues, more or less, as shown by the respective maps." A map of the land described in the grant was offered in evidence before the board. This map was proved by the testimony of Salvador Vallejo to be a faithful representation of the land; but he was unable to state whether or not it was the same that was presented to the governor. He believed, on the contrary, that the map produced was one made by himself, while that presented to the governor was made from it by Jasper O'Farrell. The witness, however, did not explicitly state that O'Farrell's map was a copy of the one produced, or that he saw O'Farrell make his map, or that he has compared the two. Under this evidence, it was decided by the board that it did not appear that the map offered in evidence was either the identical map presented to the governor or a copy of it, and that the description in the grant was not sufficient, in the absence of either a map or a juridical measurement and delivery of possession, to describe and locate the land granted, or to segregate it from the national domain. To remedy this defect in the proofs, additional testimony has been taken in this court.

By the testimony of Bedney F. MacDonald, it appears that the rancho pointed out to him as that of Lup Yomi can be readily distinguished by great natural boundaries; "that there are only two places by which you can get out of it;" and "that the boundaries all around are high mountains, except where it is bounded by the creek and the lake. The boundaries are natural boundaries and cannot well be mistaken." The witness further states that he made a map of the tract according to the boundaries as pointed out to him by Salvador Vallejo and Ramon Carrillo. Salvador Vallejo, in an additional deposition taken in this court, states, after describing the land, that he has known the tract since 1840 or 1841, and that it has been called by the name of "Lup Yomi" ever since he has known it; that it has natural boundaries, the mountains on one side, and the lake on the other; and that the boundaries of the tract are the same as those pointed out by him and Carrillo to MacDonald, the surveyor. He further states that, after the grant of the tract to him, he pointed out its boundaries to seven rancheros, his nearest neighbors, that they might know it and recognize it as his property; that he knew what those boundaries were, because the mountains were on one side, and the lake was on the other; that these boundaries were the same as those originally designated to him by an Indian chief named Minac; that "Lup Yomi," in the Indian language, means "town of stones," and this tract was so named by the Indians. José Ramon Carrillo testifies to substantially the same facts. After stating the boundaries of the tract, he adds that its boundaries are natural, consisting of the lake, the mountains and the river; and that the line runs

at the base of the mountains; and that he has known it by the name of "Lup Yomi" since 1840. He further states that Minac, the Indian chief, pointed out the land described by him, the witness, as his land, called "Lup Yomi;" that he knows of no other land called by that name; and that the adjoining valleys have different Indian names, some of which the witness mentions.

From the foregoing testimony, we think it clearly appears that the description in the grant of the land as that known by the name of "La Laguna de Lup Lomi" is sufficient to designate its locality; that the premises are identified, and the land, severed from the public domain by its designation under a name which is shown to be that under which it was well known, and which was applied to a distinct and unmistakable tract of land, enclosed within great natural boundaries limiting and defining its extent. That such a mode of designating the locality of the granted land is at least as satisfactory as that furnished by the designation of a point of commencement for a survey, we think obvious. For in this case, not only the beginning point for a survey, but all the exterior boundaries are distinctly indicated, and circumscribe the tract and limit the quantity of the land with such precision, that it has been ascertained on a survey to contain only twelve leagues instead of sixteen, the quantity mentioned in the grant. No other reasons for rejecting the claim than those we have been considering are contained in the opinion of the board, nor has any other been suggested in this court by the district attorney. Neither the genuineness of the grant nor the authority of the governor is disputed. A decree confirming the claim of the petition must therefore be entered. It will be perceived from the foregoing that the decree in this case proceeds on the ground that the grantee has fully complied with the conditions of this grant, and that the description of the land in the grant is abundantly sufficient to ascertain its locality, and to effect its severance from the public domain.

The question discussed in the first part of this opinion might therefore, with more propriety have been considered in some other case necessarily requiring its determination. But the importance of the question, and the fact that it was elaborately argued at the bar, as applicable to this case, have induced us to take this occasion fully to express our views upon it.

[NOTE. On appeal to the supreme court, the above decree was reversed, and the cause remanded for further evidence and examination. 22 How. (63 U. S.) 392. The new evidence introduced proved to be unsatisfactory, and the claim was rejected. Case No. 16,455.]